## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Joseph Upsher, | Case No. 19-cv-1805 (MJD/HB) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Tom Roy,[1] Commissioner of Corrections; Gregory T. Simon, ISR Parole Agent DOC; Jason Hanson, ISR Parole Agent DOC; Eddie Miles, Warden, MCF-Lino Lakes; Kathy Halvorson, Warden, MCF-St. Cloud; Shannen Remann,[2] Warden, MCF-Faribault, | |
| Defendants. | |

HILDY BOWBEER, United States Magistrate Judge

Plaintiff Joseph Upsher brings this action under 42 U.S.C. § 1983 alleging that Defendants violated his constitutional rights, Minnesota's predatory offender registration statute, Article III and IV of the U.S. Constitution, and the separation of powers doctrine. He also argues that Defendants defamed him, cause him emotional distress, and falsely imprisoned him. He filed an Amended Complaint on August 30, 2019 and a Complaint

---

[1] Plaintiff named former Commissioner Tom Roy in both his official and individual capacities. Paul Schnell is currently the Commissioner of the Minnesota Department of Corrections. As the current Commissioner, Schnell is automatically substituted in Roy's place for purposes of the official capacity claims, but the claims against Roy in his individual capacity remain as pled. Fed. R. Civ. P. 25(d).

[2] Defendants indicate the correct spelling of her name is Shannen Reimann. (Def. Mem. Supp. Mot. at 1 n.1 [Doc. No. 38].) For the purposes of this Report and Recommendation, the Court will use Plaintiff's spelling.

Addendum on October 1, 2019.  (*See* Am. Compl. [Doc. No. 17]; Compl. Add. [Doc. No. 24].)  The case is before the Court on Defendants' Motion to Dismiss [Doc. No. 37], which was filed on November 27, 2019.  Defendants' motion was referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). [Doc. No. 43.]  The Court, *sua sponte,* granted Plaintiff an extension of time until February 14, 2020, to file and serve his responsive memorandum.  [Doc. No. 44.]  As of the date of this writing, Plaintiff has filed nothing in opposition to Defendants' motion.

## I.    Factual Background

Plaintiff was formerly incarcerated by the Minnesota Department of Corrections ("DOC").  In 2013 he pled guilty to Failure to Register as a Predatory Offender and was committed to the custody of the Commissioner of Corrections for 21 months (including both custody and supervised release).  (Wright-MacLeod Aff. Ex. A ¶¶ 2–3 (Findings of Fact) [Doc. No. 39-1].)[3]  Additionally, because Plaintiff was assessed to be a high risk (level-III) offender, his period of custody was to be followed by additional ten years of conditional release, pursuant to Minn. Stat. § 243.166, Subd. 5a.  (*See id.* ¶ 3 (Findings of Fact).)

Plaintiff indicates that between February and October 2014 he was on conditional

---

[3]  Generally, a court may not consider matters outside the pleadings in assessing the sufficiency of a complaint under the Rule 12(b)(6) standard.  *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999) (citations omitted).  A court may make exceptions to this rule for matters of public record, materials "necessarily embraced by" the complaint, and exhibits submitted with the complaint.  *Id.* (citations omitted).  The underlying criminal charges and sentence are central to Plaintiff's complaint, so documents from that case are fairly embraced by the pleadings and may be considered by the Court at this stage.

release and living in DOC housing in Red Wing, Minnesota.  (Am. Compl. at 8–9.)  He

was then transferred "under the Texas Board of Pardons and Parole Division" to Houston,

Texas.  (*Id.* at 13, 26.)  Plaintiff reports that he was "held in-custody" at a jail in

Richmond, Texas for violating the terms of his conditional release before being

"forcefully transported" by the Minnesota DOC to a facility in Lino Lakes, Minnesota.

(*Id.* at 15–16, 18, 28–29, 33.)  Plaintiff says he was transported in March 2016 from the

Lino Lakes facility back to the DOC housing in Red Wing where he had previously

stayed.  (*Id.* at 18.)  At some later point[4] Plaintiff alleges that he was re-arrested and

subsequently convicted for "escape from custody," and was given a "concurrent

sentence" at the DOC facility in St. Cloud, Minnesota.  (*Id.* at 20, 31, 35–36.)  Then, in

April 2017, Plaintiff was transferred from MCF-St. Cloud to MCF-Faribault.  (*Id.* at 38.)

In 2015 the Minnesota Supreme Court considered a matter involving an appellant

who, like Plaintiff, was sentenced to a 10-year period of conditional release after being

assessed as a level-III offender.  *State v. Her*, 862 N.W. 2d 692 (Minn. 2015).  The court

applied the reasoning of the United States Supreme Court's decisions in *Apprendi v. New

Jersey*, 530 U.S. 466 (2000) and *Blakely v. Washington*, 542 U.S. 296 (2004)—which

hold that any fact other than the fact of a prior conviction that increases the penalty for an

offense must be found by a jury beyond a reasonable doubt—to conclude that the

appellant's conditional release term must be vacated.  *Id.*  Three years later, in 2018,

Plaintiff challenged his own term of conditional release as unconstitutional under these

---

[4]  Plaintiff says it was "on or about 07/26/2016 to 01/27/2017."  (Am. Compl. at 20.)

precedents.  (*See* Wright-MacLeod Aff. Ex. A ¶ 7 (Findings of Fact).)  The Dakota

County District Court agreed, concluding that Plaintiff did not, by pleading guilty, waive

his right to a jury determination of whether he was at a risk level III.  (*Id.* ¶ 8

(Conclusions of Law).)  Because no jury had determined Plaintiff's risk level, the court

granted Plaintiff's motion to vacate the conditional release portion of his sentence.  (*Id.*)

That order was signed on July 10, 2018, but not filed until August 27, 2018.  (*Id.* at 4;

Notice of Filing at 5.)  Plaintiff indicates that at the time the order was filed he was

incarcerated at MCF-Faribault for violating the terms of his conditional release.  He was

released on August 27, 2018, the same day the court's order was filed.  (Am. Compl. at

40.)

Plaintiff now sues former DOC Commissioner Tom Roy and several DOC

employees from the various facilities at which he was incarcerated, in both their

individual and official capacities.  (*See* Am. Compl., Compl. Add.)  Plaintiff's claims

differ among the Defendants, but generally center around the unlawfulness of his

sentence and incarceration.  They primarily include constitutional violations (of the

Fourth, Fifth, Sixth, Eighth, Thirteenth, and Fourteenth Amendments) and state tort

actions (for false imprisonment, defamation, and emotional distress).  He also alleges that

his sentence violated the state predatory offender registration law, Articles III and IV of

the U.S. Constitution, the separation of powers doctrine, and the law established by

*Apprendi*, *Blakely*, and *Her*.  However, Plaintiff's amended complaint contains very few

factual allegations beyond the dates and locations of his various transfers, and virtually

no allegations supporting his claims.

4

The Court notes that Plaintiff's amended complaint is structured in a somewhat unusual fashion. The factual allegations are interspersed throughout, but are organized to move chronologically through the timeline of Plaintiff's sentence, from February 2014 through August 2018. Each new factual allegation ends with a conclusory statement such as "[Plaintiff] suffered personal injury . . . for actions [a named Defendant] takes under color of state law," and "[Named Defendant] should have known that he was assisting in causing personal injury to the Plaintiff under the unlawful situation he confronted, and violated the law, and the Plaintiff's clearly-established federal rights." (*See e.g.*, Am. Compl. at 9–10.) Plaintiff follows each such statement with paragraphs listing the rights the Defendant allegedly violated. For example, the first factual paragraph is numbered as paragraph 7 and it specifically names Defendant Roy. (*Id.* at 8–9.) It is followed by twelve paragraphs (labeled "Count 1," "Count 2," and so on) alleging a variety of violations. Except where noted, the Court interprets this structure as follows: The opening paragraph contains all of the relevant facts that pertain to the "counts" that immediately follow it, and the facts and counts are only relevant to the Defendant(s) specifically named therein.

Plaintiff seeks $4,651,000 in damages, "all additional relief to which [he] is entitled," and injunctive relief in the form of an "opportunity to return to the state of Texas without any retaliation from defendants or their affiliates." (Am. Compl. at 42.)

## II.    Discussion

On a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court "must take the well-pleaded allegations of the complaint as true, and

construe the complaint, and all reasonable inferences arising therefrom, most favorably to the pleader." *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

A court has the duty to construe liberally a pro se party's pleadings. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). This means that even if a claim "is not pleaded with legal nicety," a court should construe the allegations so that the claim may "be considered within the proper legal framework." *Stone v. Harry*, 364 F.3d 912, 915 (8th Cir. 2004). The court should not, however, "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint." *Id.* Nor should a court "assume the role of advocate." *Sneh v. Bank of N.Y. Mellon*, Case No. 12-cv-954 (MJD/JSM), 2012 WL 5519690, at *5 (D. Minn. Oct. 30, 2012) (quoting *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999)), *R. & R. adopted*, 2012 WL 5519682 (D. Minn. Nov. 14, 2012).

### A.    Official Capacity Claims

The Eleventh Amendment provides "a state with immunity from suit in federal court by citizens of other states and by its own citizens." *Skelton v. Henry*, 390 F.3d 614, 617 (8th Cir. 2004). "A state agency or official may invoke the State's Eleventh Amendment immunity if immunity will 'protect the state treasury from liability that

6

would have had essentially the same practical consequences as a judgment against the State itself.'" *Hadley v. N. Ark. Cmty. Tech. Coll.*, 76 F.3d 1437, 1438 (8th Cir. 1996) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 123 n.34 (1984)). The DOC is considered a state agency with Eleventh Amendment immunity. *See Carter v. CWF Sols., LLC*, Case No. 09-cv-16 (JMR/FLN), 2009 WL 512482, at *2 (D. Minn. Feb. 27, 2009).

Because the State has not waived its sovereign immunity with respect to any of the claims asserted and sovereign immunity has not been abrogated by any other source of law, all of Plaintiff's claims against Defendants in their official capacities should be dismissed. *See Johnson v. Mandac*, Case No. 16-cv-0268 (DWF/HB), 2016 WL 8188503, at *4 (D. Minn. Dec. 7, 2016), *R. & R. adopted*, 2017 WL 438734 (D. Minn. Feb. 1, 2017).

## B.    Individual Capacity Claims

Defendants also seek dismissal of Plaintiff's individual capacity claims on the basis that Plaintiff did not plead facts showing their personal involvement in any of the alleged conduct.  "Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir.1990).  To establish personal liability of Defendants, Plaintiff "must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of his constitutional rights." *Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006). "Respondeat superior is not applicable to § 1983 claims," *Ouzts v. Cummins*, 825 F.2d 1276, 1277 (8th Cir. 1987), and generally, "a warden's general responsibility for

7

supervising the operations of a prison is insufficient to establish personal involvement."

*Ouzts v. Cummins*, 825 F.2d 1276, 1277 (8th Cir. 1987).

### 1.    Plaintiff's Constitutional Claims

Plaintiff alleges that Defendant Roy "assisted in violating the IV Amendment of the United States Constitution." (Am. Compl. at 11–12.) The Fourth Amendment protects the right of "the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Plaintiff does not explain how Roy violated this right, but only says that Roy "should have known that he was assisting in causing personal injury to the Plaintiff under the unlawful situation he confronted." (Am. Compl. at 9.) Without more factual support, Plaintiff fails to establish that Roy violated the Fourth Amendment.

Plaintiff next alleges that Roy violated his Fifth Amendment rights. (Am. Compl. at 10, 12.) Plaintiff also specifically contends that "the imposition of the predatory offender registration requirement and conditional release period violate double jeopardy protections, the Defendant [Roy] violated involving the Plaintiff." (*Id.* at 10.) The Fifth Amendment protects, among other things, an individual from being "subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. Plaintiff does not explain how Roy was connected to his sentencing (or the predatory offender registration requirement), so this claim suffers from the same infirmity as Plaintiff's Fourth Amendment claim. Additionally, double jeopardy is only implicated by a confinement scheme that is "punitive," not regulatory. *Seling v. Young*, 531 U.S. 250, 267 (2001). Although the statute is not clear on its face, the Minnesota Supreme Court

has held that the predatory offender registration statute is regulatory in nature, not punitive. *Boutin v. LaFleur*, 591 N.W. 2d 711, 717 (Minn. 1999). Plaintiff's Fifth Amendment rights were therefore not implicated.

Plaintiff asserts that Roy violated his Sixth Amendment right (Am. Compl. at 12), which the Court construes as a specific reference to Plaintiff's right to a jury trial. Relatedly, Plaintiff contends that Defendants Roy and Simon "assisted" or "aid[ed] and abet[ted] in holding Plaintiff in-custody" in violation of "the laws where the conditional release period violates the requirements set forth" in *Apprendi* and *Blakely* and "assisted in violating" the law laid out by the Minnesota Supreme Court in *State v. Her.* (*Id.* at 10–11, 14, 17, 19, 21–22, 24–25.) The Sixth Amendment provides that an "accused [person] shall enjoy the right to a speedy and public trial, by an impartial jury." U.S. Const. amend. VI. The Sixth Amendment also requires that any fact, other than a prior conviction, that increases the penalty for a crime beyond a statutory maximum must be submitted to a jury. *Blakely*, 542 U.S. at 301–03. An offender's risk-level status must therefore be found by a jury before it can be used to prolong a sentence beyond the statutory maximum. *Her*, 862 N.W. 2d at 700 (Minn. 2016). However, Plaintiff asserts no facts to support his allegation that either Roy or Simon was responsible for the district court's imposition of a sentence that included a 10-year term of conditional release, and the conclusory assertions are insufficient to satisfy Plaintiff's threshold pleading requirement.

Plaintiff appears to make the same argument when he alleges all Defendants violated Article III, Section 2 of the U.S. Constitution. (Am. Compl. at 11, 14, 17, 19,

22, 28, 30, 32, 34, 37, 39, 41.)  Although Article III, Section 2 covers many issues related to the federal courts' operation, the Court construes Plaintiff's amended complaint to pertain specifically to the provision that the "trial of all crimes, except in cases of impeachment, shall be by jury."  U.S. Const. art. III, sec. 2.  But for the same reasons that Plaintiff's Sixth Amendment-based claims fail, so too do any arising out of Article III: Plaintiff fails to adduce any facts showing that any particular Defendant was responsible for the imposition of the conditional release portion of his sentence.

Plaintiff next alleges that all six Defendants violated his Eighth Amendment rights.  (Am. Compl. at 12, 15, 17, 20, 22, 25, 28, 30, 32, 35, 37, 39, 41.)  The Eighth Amendment provides that "excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  U.S. Const. amend. VIII.  As with his other claims, Plaintiff does not support his bare-bones allegations with any factual context, or otherwise indicate how he believes the Eighth Amendment relates to his situation.  He does not allege facts related to bail or fines, and does not describe circumstances involving physical force, or inhumane or unsafe living conditions, as would typically be required to make a showing of cruel and unusual punishment.  *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  Plaintiff's Eighth Amendment claims against all Defendants should therefore also be dismissed.

Plaintiff also claims Defendants Roy, Simon, Hanson, Miles, and Halvorson violated his Thirteenth Amendment rights.  (Am. Compl. at 12, 15, 17, 20, 22, 25–26, 28, 32–33, 35, 37, 39.)  The Thirteenth Amendment provides that "[n]either slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been

10

duly convicted, shall exist within the United States, or any place subject to their jurisdiction." U.S. Const. amend. XIII. Plaintiff does not support his claim with any factual basis, such as a claim that he was forced to work while in custody, so it fails for the same reason as those discussed above. Moreover, the Court notes that requiring an inmate to work while incarcerated does not violate the Thirteenth Amendment. *Mosby v. Mabry*, 697 F.2d 213, 215 (8th Cir. 1982). Plaintiff therefore fails to state a claim under the Thirteenth Amendment.

Plaintiff alleges that Defendants Roy, Simon, Miles, Halvorson and Remann also violated the Fourteenth Amendment, although he does not invoke any particular right. (Am. Compl. at 12, 15, 18, 20, 22–23, 26, 28, 31, 35, 37, 39–40.) The Court liberally construes Plaintiff's claim to be that Defendants violated both his substantive and procedural due process rights. But Plaintiff does not offer facts to support either claim. In order to establish a violation of his procedural due process rights, Plaintiff would need to show that he was deprived of a protected liberty interest without adequate procedural protections. *See Kloch v. Kohl*, 545 F.3d 603, 607 (8th Cir. 2008). In order to make out a violation of substantive due process, Plaintiff would need to show that Defendants' actions implicated a fundamental right and "shocked the conscience." *Slusarchuk v. Hoff*, 346 F.3d 1178, 1181–82 (8th Cir. 2003). Plaintiff does not offer a factual basis to support either finding.

Plaintiff additionally alleges that all six Defendants assisted in his wrongful incarceration. (Am. Compl. at 12, 15, 17, 20, 22, 24, 27, 30, 32, 34, 37, 39.) The Eighth Circuit has recognized claims for wrongful incarceration under both the Eighth and the

Fourteenth Amendments.  *See Scott v. Baldwin*, 720 F.2d 1034 (8th Cir. 2013); *Young v. City of Little Rock*, 249 F.3d 730 (8th Cir. 2001).  In order to make out a claim that Defendants wrongfully incarcerated him, Plaintiff must show—as to each Defendant— that he or she was deliberately indifferent to his rights.  *Scott*, 720 F.3d at 1036.  That is, Plaintiff's claim includes a subjective element wherein Plaintiff must show "something more than negligence but less than actual intent to harm; it requires proof of a reckless disregard of the known risk."  *Crow v. Montgomery*, 403 F.3d 598, 602 (8th Cir. 2005). Like his other claims, Plaintiff's attempted claim for wrongful incarceration fails for lack of factual basis.  Plaintiff offers no factual context to support a conclusion that any of the Defendants had any awareness of the constitutional infirmity of the conditional release portion of his sentence.  Indeed, Plaintiff agrees that he was released from custody "on or about" August 27, 2018, the day the Dakota County court's order vacating his sentence was filed.  (Wright-MacLeod Aff. Ex. B [Doc. No. 39-1 at 5]; Am. Compl. at 40.)

In addition to his rights-based claims, Plaintiff argues that Defendants violated constitutional doctrines.  He first argues that Defendant Roy "assisted in violating the United States Constitution Article IV, section 1 and 2."  (Am. Compl. at 11.)  Section 1 of Article IV requires a state to give "[f]ull faith and credit" to other states' "public acts, records, and judicial proceedings" and Section 2 provides for extradition among the states.  U.S. Const. art. IV. §§ 1–2.  It is not clear what claim Plaintiff is making pursuant to these sections, but the Court interprets his claim as relating to the period of time when Plaintiff alleges he was in Texas and was "forcefully transported under the rearrest observation of [Defendant Roy] by Minnesota Department of Corrections malicious

arrest to the MCF Lino Lakes [in Minnesota]."[5]  (Am. Compl. at 16.)  Without further

facts, however, the Court cannot determine what Plaintiff is claiming, let alone whether

such claims are valid.  Plaintiff's final constitutional claim is that Defendant Roy

"assisted in violating the separation of powers clause" (Am. Compl. at 14), but here, too,

a factual basis for his claim is absent; none of the facts offered in the amended complaint

seem to pertain to the branches of government or the separation among them.

    The Court therefore concludes that Plaintiff has failed to plead enough factual

content to make any of his federal claims against Defendants in their individual capacity

facially plausible.  *Iqbal*, 556 U.S. at 678.  It therefore recommends that all of his claims

be dismissed pursuant to Rule 12(b)(6).

    In addition, the Court recommends that the dismissal of Plaintiff's federal claims

against all Defendants be with prejudice.  First, the Plaintiff has already amended his

complaint once, and given the deficiencies described herein, the Court cannot conceive of

additional allegations that would convert his complaint to one that plausibly alleges any

of the federal constitutional claims he has attempted to plead.  *See McLean v. United*

*States*, 566 F.3d 391, 400 (4th Cir. 2009) ("To the extent, however, that a district court is

truly unable to conceive of any set of facts under which a plaintiff would be entitled to

relief, the district court would err in designating this dismissal to be without prejudice.")

---

[5]  The Court notes, however, that Plaintiff raises his Article IV claim in conjunction with
a different set of facts, unrelated to interstate relations, but rather relating to the period of
time he was "held in custody against his will" from February 2014 to October 2014.
Because this set of facts has no plausible bearing on Article IV, the Court construes this
aspect of Plaintiff's claim broadly to apply to the later factual allegations about Plaintiff's
extradition from Texas.

Second, as already noted, Plaintiff did not file a response to Defendants' motion to dismiss, despite having been granted an extension of time to do so.  Moreover, he has not communicated in any other way to the Court that he intends to proceed diligently with this action.  The Court may dismiss an action with prejudice "[i]f the plaintiff fails to prosecute or to comply with a court order."  Fed. R. Civ. P. 41(b).  Moreover, District of Minnesota Local Rule 7.1(g) permits a court to take appropriate action if a party fails to timely file a memorandum of law.  Courts in this District have found that a plaintiff's failure to respond to the other side's dispositive motion amounts to a failure to prosecute, and in appropriate circumstances have dismissed a case with prejudice on those grounds. *See Silga v. Fairview Univ. Med. Ctr.*, 21 F. App'x 525, 526 (8th Cir. 2001); *Witthuhn v. Nationstar Mortg., LLC*, Case No. 13-cv-680 (JNE/JJK), 2014 WL 4232037, at *3 (D. Minn. Aug. 26, 2014); *Grant v. Astrue*, Case No. 09-cv-2818 (DWF/JSM), 2010 WL 3023661, at *1 (D. Minn. Aug. 2, 2010) *R. & R. adopted* 2010 WL 3023915, at *2 (D. Minn. July 31, 2010).

For both of these reasons the Court recommends that dismissal of Plaintiffs' federal claims with prejudice would be appropriate here.

### 2.    Qualified Immunity

Alternatively, Defendants argue they are entitled to qualified immunity from Plaintiff's individual capacity claims because Plaintiff has not alleged facts creating a plausible inference that they violated a clearly established law or were directly responsible for any of the alleged conduct.

"Qualified immunity may protect government officials from liability under

14

42 U.S.C. § 1983, but not if their conduct violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Nelson v. Corr. Med. Servs.*, 583 F.3d 522, 527 (8th Cir. 2009) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)).  In analyzing a claim of qualified immunity, the Court considers: (1) whether the facts viewed in the light most favorable to the plaintiff support a conclusion that the defendant violated a constitutional right, and (2) whether the constitutional right at stake was "clearly established" at the time of the alleged violation "such that a reasonable official would have known that his or her actions were unlawful." *See id.* at 528 (citing *Pearson v. Callahan*, 555 U.S. 223, 232-33 (2009)).  The Court has discretion as to which prong "should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236.

If the District Court adopts this Court's recommendation that Plaintiff's federal constitutional claims should be dismissed pursuant to Rule 12(b)(6) for the reasons described, it need not address the issue of qualified immunity.  The Court notes, however, that just as Plaintiff has failed to plausibly allege that any Defendant was personally involved in any constitutional violation, he has also failed to allege any basis on which any Defendant could be found to have knowingly violated a "clearly established" constitutional right.

### 3.    Plaintiff's State Law Claims

Plaintiff also raises several claims based in Minnesota state law.  If the District Court concludes that Plaintiff's federal claims fail, his state claims may be dismissed without prejudice pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction without

further consideration of the merits of those claims.  28 U.S.C. § 1367(c)(3).  For the sake of completeness, however, the Court addresses Defendants' additional arguments with regard to Plaintiff's state claims.

His first claim, that Defendant Simon defamed him, is easily dismissed.  (Am. Compl. at 27.)  Defamation requires a showing that (1) a defendant communicated a statement to someone other than Plaintiff (2) which was false, and (3) which "tends to harm the plaintiff's reputation and to lower the plaintiff in the estimation of the community."  *Bahr v. Boise Cascade Corp.*, 766 N.W.2d 910, 919–20 (Minn. 2009).  At no point does Plaintiff reference Simon ever making a statement to anyone, let alone adduce facts that any such statement was false or harmful.  His amended complaint therefore lacks a factual basis on all three of the requisite prongs.

Although the specific language of the allegations varies, Plaintiff also alleges that all six Defendants caused him emotional distress or "[violated his] medical mental health."  (*See* Am. Compl. at 15,18, 20, 23, 28, 30, 33, 35, 37, 39.)  Minnesota law recognizes tort claims for both negligent and intentional infliction of emotional distress. *See K.A.C. v. Benson*, 527 N.W.2d 553, 557 (Minn. 1995); *Hubbard v. United Press Int., Inc.*, 330 N.W.2d 428, 438–39 (Minn. 1983).  However, Plaintiff fails to plead any facts to support his emotional injury claim.  At most Plaintiff asserts that he suffered "personal injury" at the hands of a Defendant, but he never explains what that injury was or what particular conduct caused it, let alone that the conduct rose to the level required to make out a claim under Minnesota law.

Plaintiff also alleges that all six Defendants falsely imprisoned him.  (Am. Compl.

16

at 15, 17, 20, 22, 28, 30, 32, 34, 37, 39.)  In order to make out a false imprisonment

claim, Plaintiff is required to show that a Defendant unlawfully arrested and detained

him.  *Lundeen v. Renteria*, 224 N.W.2d 132, 135 (Minn. 1974).  Plaintiff has offered no

such evidence here.  Plaintiff's sentence was lawful until the Dakota County District

Court vacated the conditional release portion of it, and, as Plaintiff acknowledges, he was

released from custody on the same day the court order was filed.  There is therefore no

basis in the complaint for Plaintiff's allegation that he was detained without legal

justification.

Finally, Plaintiff raises a claim that Defendants Roy, Simon, Miles, Halvorson,

and Remann violated Minnesota's predatory offender registration law, Minn. Stat.

§ 243.166.  (Am. Compl. at 16, 30, 34, 37, 39, 41.)  But a statute does not give rise to a

civil remedy unless the statute explicitly or implicitly creates a cause of action.  *Flour*

*Exch. Bldg. Corp. v. State*, 524 N.W.2d 496, 498 (Minn. Ct. App. 1994).  Because Minn.

Stat. § 243.166 does not create an express cause of action, the Court looks to whether an

implied right of action can be inferred from its text.  The Minnesota Court of Appeals has

offered the following criteria for finding an implied cause of action:

> In determining whether a private cause of action is implied, we consider three
> factors: (1) whether the appellants belong to a special class of persons for
> whose benefit the statute was enacted, (2) whether the legislature indicated
> an intent to create or deny a private remedy, and (3) whether inferring a
> private remedy would be consistent with the underlying purpose of the
> legislation.

*All. for Metro. Stability v. Metro. Council*, 671 N.W.2d 905, 916 (Minn. Ct. App. 2003).

Plaintiff makes no showing on any of these factors, and the Court sees no basis on which

to find that the statute created an implied right of action.  Plaintiff is among the class of persons regulated by the statute, not those "for whose benefit the statute was enacted." The Court further finds no indication that the legislature intended to create a private cause of action, or that a private remedy would be consistent with the statute's purpose. Accordingly, Plaintiff has not sufficiently alleged a civil cause of action against any of the Defendants for violation of Minnesota's predatory offender registration statute.

The Court concludes that Plaintiff has failed to plead enough factual content to make any of his state claims against Defendants in their individual capacity facially plausible.  *Iqbal*, 556 U.S. at 678.  If the District Court does not dismiss them for lack of subject matter jurisdiction, the Court recommends that they be dismissed pursuant to Rule 12(b)(6).

### 4.    Official Immunity

Defendants also argue that official immunity bars Plaintiff's tort claims.  "A public official charged by law with duties which call for the exercise of his judgment or discretion is not personally liable to an individual for damages unless he is guilty of a willful or malicious wrong."  *Elwood v. County of Rice*, 423 N.W. 2d 671, 677 (Minn. 1988) (internal quotations omitted).  Official immunity protects officials whose duties require them to exercise discretion, such that an official is only liable for unreasonable actions—those that he knew were wrong.  *See Rico v. State*, 472 N.W.2d 100, 108 (Minn. 1991).

If the District Court adopts this Court's recommendation that the claims should be dismissed on other grounds, it need not address the issue of official immunity.  The Court

notes, however, that as with Plaintiff's constitutional claims, there is no evidence on the face of the amended complaint to suggest that Defendants were personally involved in any unlawful actions, let alone an allegation that Defendants acted "willfully" or "maliciously." Defendants are therefore also entitled to official immunity for Plaintiff's state law claims against them in their individual capacity.

## III.    CONCLUSION

At their core, Plaintiff's claims arise out of the events that befell him during a period of conditional release that was later found to have been invalid because it was based on a finding about his offender risk level that had not been tried to a jury and to which he had not specifically admitted as part of his plea agreement. It is understandable that Plaintiff would be unhappy about that experience. However, his amended complaint simply does not plausibly allege that any of the Defendants was personally responsible for a violation of his federal constitutional rights or his rights under state tort law, nor can the Court conceive of likely additional allegations that would remedy those deficiencies.

Accordingly, based on the foregoing, and on all of the files, records, and proceedings herein **IT IS HEREBY RECOMMENDED THAT** Defendants' Motion to Dismiss [Doc. No. 37] be **GRANTED**, that Plaintiff's federal claims be **DISMISSED WITH PREJUDICE** pursuant to Federal Rule of Civil Procedure 12(b)(6), and that his state tort law claims be **DISMISSED WITHOUT PREJUDICE** pursuant to Federal Rule of Civil Procedure 12(b)(1).

Dated:  April 15, 2020                    s/ *Hildy Bowbeer*
                                          HILDY BOWBEER
                                          United States Magistrate Judge

**<u>NOTICE</u>**

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.  Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections.  LR 72.2(b)(2).  All objections and responses must comply with the word or line limits set forth in LR 72.2(c).